UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
GREGORY CRAWFORD, LLOYD LEDLUM, KAREN
REYNOLDS, NANCY RUTKOWSKI, STEVEN SCICERE,
FRANCIS SMITH, and LISA ZAREMSKI,

               Plaintiffs,

  -against-                             05 cv 5368 (KMW)
                                         MEMORANDUM OPINION
THE DEPARTMENT OF INVESTIGATION, THE CITY   AND ORDER
OF NEW YORK, DANIEL BROWNELL, JANICE
ENGLISH, ELIZABETH GLAZER, VINCENT GREEN,
ROSE GILL HEARN, MARJORIE LANDA, ROBERT
JOYCE, MARY KOSLOW, JOHN MCMAHON, STACIE
PITTELL, and DAVID VANDERNAALT,

              Defendants.
------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

     Plaintiffs bring this action against Defendants pursuant to

Title VII, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Age

Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (the

"ADEA"), and the New York State and City Human Rights Laws,

alleging that their selection for layoff as part of a May 2003

reduction in force was the result of age, sex, and/or race

discrimination.  Two Plaintiffs allege in addition that they

suffered retaliation for engaging in a protected activity or

opposing discrimination.  Defendants have moved for summary

judgment.  For the reasons stated below, Defendants' motion is

granted.


**I.   Background**

     Unless otherwise noted, the following facts are undisputed

and are derived from the parties' Local Civil Rule 56.1

statements,[1] affidavits, and other submissions.[2]  All inferences have been drawn in favor of Plaintiffs.

The New York City Department of Investigation ("DOI") is a government agency that investigates and refers for prosecution New York City employees and contractors who may have engaged in corrupt or fraudulent activities or unethical conduct.  Compl. ¶ 25.  In 2002 and 2003, New York City's Office of Management and Budget ("OMB") ordered DOI and other city agencies to reduce their budgets a number of times to allay the city's financial crisis.  Defs.' Rule 56.1 Stmt. in Supp. of Motion for Summ. J. ¶¶ 23, 26, 35, 37 [hereinafter "Defs.' 56.1 Stmt."].  DOI met

---

[1] Plaintiffs' [Amended] Counter-Statement [to Defendants'] Local Civil Rule 56.1 Statement of Undisputed Facts ("Pls.' Amended 56.1 St.") contains argument, more than one factual assertion per numbered paragraph, and is significantly different from their initial submission.  It accordingly fails to comply with Local Rule 56.1 and Rule 2(g) of the Court's Individual Rules.  Because "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001), the Court will consider Plaintiffs' Amended 56.1 Statement, despite its technical violation of the rules.

[2] All exhibits attached to the Declaration of Eugenie Gilmore to Amended Plaintiffs' Counter-Statement to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts are referred to herein as "Pls.' Ex. [X]."  All exhibits attached to the Declaration of Lawrence J. Profeta in Support of Defendants' Motion for Summary Judgment are referred to herein as "Defs.' Ex. [X]."  All exhibits attached to the Reply Declaration of Lawrence J. Profeta in Further Support of Defendants' Motion for Summary Judgment are referred to herein as "Defs.' Reply Ex. [X]."  Deposition testimony is referred to as "[X] Dep. [X]."

each of OMB's budget reduction reductions without laying off personnel until February 2003.  Defs.' 56.1 Stmt. ¶ 29.[3]

In early 2003, OMB ordered DOI to reduce its budget by $1.7 million (the "Reduction Target").  Defs.' 56.1 Stmt. ¶¶ 35, 37. In late February 2003, DOI concluded that it had no choice but to lay off personnel.[4]  Defs.' 56.1 Stmt. ¶¶ 38-39.

In deciding whom to lay off, members of DOI's Executive Staff reviewed performance evaluations for all agency personnel. Defs.' 56.1 Stmt. ¶ 42.  Each member of the Executive Staff overseeing units of DOI made recommendations about how to consolidate the agency's operations and about which employees to lay off.  Defs.' 56.1 Stmt. ¶ 44.  DOI contends that job performance and productivity were the primary factors in deciding whom to lay off.  E.g., Defs.' 56.1 Stmt. ¶¶ 41, 44.  Plaintiffs dispute this contention, arguing that DOI's reasons were discriminatory and, in the case of two Plaintiffs, retaliatory.

Plaintiffs are seven former DOI employees who were laid off in May 2003, in connection with DOI's efforts to meet the Reduction Target.  Gregory Crawford ("Crawford") is an African

---

[3] Although Plaintiffs state that they lack sufficient knowledge to respond to Defendants' statement, they admit that they "are not aware of any employee laid off as of November[] 2002."  Pls.' Counter-Statement Local Civil Rule 56.1 Statement of Undisputed Facts ¶ 29 [hereinafter "Pls.' 56.1 Stmt."].

[4] Plaintiffs dispute DOI's contention that, to meet the Reduction Target, it had no choice but to lay off personnel; the Court addresses Plaintiffs' argument infra Part II.b.2.

American male who worked as a Special Investigator with DOI's Procurement, Real Property, Parks and Finance Unit (the "PRPF Unit"). At the time of his layoff, Crawford was 55. Defs.' 56.1 Stmt. ¶ 2. He alleges that DOI chose him for layoff because of his age, race, and sex.

Lloyd Ledlum ("Ledlum") is an African American male. At the time of his layoff, Ledlum was 53 and was an Investigative Auditor/Confidential Investigator in DOI's PRPF Unit. Defs.' 56.1 Stmt. ¶ 3. He alleges that DOI chose him for layoff because of his age and sex, and in retaliation for having engaged in a protected activity.

Karen Reynolds ("Reynolds") is a white female who was a Senior Security Analyst and Special Investigator in DOI's Citywide Information Security, Architecture, Formulation, and Enforcement Unit (the "CISAFE Unit"). Compl. ¶ 133. At the time of her layoff, Reynolds was 56. Defs.' 56.1 Stmt. ¶ 4. She alleges that DOI chose her for layoff because of her age and sex.

Nancy Rutkowski ("Rutkowski") is a white female. At the time of her layoff, Rutkowski was 49 and was the Director of DOI's Covert Support/Investigative Funding Unit. Defs.' 56.1 Stmt. ¶ 5. She alleges that DOI chose her for layoff because of her age, race, and sex.

Steven Scicere is an African American male who worked as the Deputy Inspector General of DOI's Internal Control Unit. At the time of his layoff, Scicere was 43. Defs.' 56.1 Stmt. ¶ 6. He

4

alleges that DOI chose him for layoff because of his age, race, and sex.

Francis Smith ("Smith") is a white male.  At the time of his layoff, Smith was 49 and was a Chief Investigator in DOI's Fire/Taxi and Limousine Unit.  Defs.' 56.1 Stmt. ¶ 7.  He alleges that DOI chose him for layoff because of his age, race, and sex, and in retaliation for having engaged in a protected activity.

Lisa Zaremski ("Zaremski") is a white female.  At the time of her layoff, Zaremski was 53 and was a Confidential Investigator in DOI's Office of the Inspector General overseeing the Department of Citywide Administrative Services.  Defs.' 56.1 Stmt. ¶ 8.  She alleges that DOI chose her for layoff because of her age.

## II.  Discussion

### A.    Summary Judgment Standard

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). "[S]ubstantive law will identify which facts are material," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and an

issue of "material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).  All ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001).  But "[a] non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Rather, a non-moving party "must 'set forth specific facts showing that there is a genuine issue for trial,'" id. (quoting Fed. R. Civ. P. 56(e)); he or she "'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" Id. (quoting Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998))).

**B.   Merits**

**1.   Legal Standard for Discrimination Claims**

On a motion for summary judgment, claims of discrimination under Title VII, the ADEA, and New York law are analyzed under

the framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[5]

Pursuant to this three-step burden-shifting test, "a plaintiff must first establish a <u>prima facie</u> case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216 (2d Cir. 2005) (quoting <u>Mario v. P&C Food Mkts., Inc.</u>, 313 F.3d 758, 767 (2d Cir. 2002)). This burden is "<u>de minimis</u>." <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 76 (2d Cir. 2005) (internal citation omitted).

Once a plaintiff establishes a <u>prima facie</u> case, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." <u>Dawson</u>, 398 F.3d at 216. (quoting <u>Mario</u>, 313 F.3d at 767).

"If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis." <u>Id.</u> The plaintiff must then show, by a preponderance

---

[5]<u>See</u> <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001) (ADEA); <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 565 n.1 (2d Cir. 2000) (NYSHRL); <u>Ganzy v. Allen Christian Sch.</u>, 995 F. Supp. 340, 350 (E.D.N.Y. 1997) (NYSCRL).

of the evidence, that the reason the defendant has offered is pretextual, and that the adverse action was in fact motivated by discrimination.  Id.; see also McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006).  "[T]he ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited . . . discrimination occurred."  Woodman, 411 F.3d at 76 (internal citations omitted).

The Court assumes, arguendo, that Plaintiffs have established a prima facie case of discrimination, and begins its analysis with Defendants' proferred reasons for terminating Plaintiffs' employment.  See Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 317 (2d Cir. 1999); Graves v. Finch Pruyn & Co., 457 F.3d 181, 187-88 (2d Cir. 2006).

### 2.   Plaintiffs' Discrimination Claims

Defendants state that they terminated Plaintiffs because: (1) downsizing was necessary to meet the Reduction Target; (2) five of the seven Plaintiffs were not performing their jobs satisfactorily; and (3) the remaining two Plaintiffs' jobs were eliminated.  Defs.' 56.1 Stmt. ¶¶ 38-257 (stating the circumstances surrounding DOI's downsizing and listing its purported bases upon which to terminate each Plaintiff).  Each of these reasons is a legitimate, nondiscriminatory reason for terminating Plaintiffs' employment.  See, e.g., Cross v. N.Y.C Transit Auth., 417 F.3d 241, 250 (2d Cir. 2005); Danzer v. Norden

Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998).  Stoddard v. Eastman
Kodak, Co., No. 03 cv 6376, 2007 WL 952020, *8, 2007 U.S. Dist.
LEXIS 22984, *23-24; Bartz v. Agway, Inc., 844 F. Supp. 106, 112
(N.D.N.Y. 1994).

### a.   Downsizing

Plaintiffs argue that DOI's stated need to downsize was
pretextual in light of the fact that DOI promoted or gave raises
to current personnel and hired additional personnel in 2002-
2003.[6]  See Pls.' 56.1 Stmt. ¶ 38.  Plaintiffs have failed,
however, to link these business decisions -- with which courts
generally do not interfere -- with their claims of pretext.  See
Foxworth v. Am. Bible Soc'y, 03 cv 3005, 2005 WL 1837504, *7,
2005 U.S. Dist. LEXIS 16105, *23 (S.D.N.Y. Aug. 3, 2005) (citing
Fitzpatrick v. N.Y. Cornell Hosp., No. 00 cv 8594, 2003 WL
102853, *7, 2002 U.S. Dist. LEXIS 25166, *21-22 (S.D.N.Y. Jan. 9,
2003)).  Accordingly, Plaintiffs' argument on this point does not
advance their case.

### b.   Individual Plaintiffs

### 1.   Crawford

DOI has provided evidence that Crawford's performance has
declined over the years and that his supervisors expressed

---

[6] The DOI Commissioner testified that she believed it was
necessary to give raises and promotions to some of DOI's
employees in 2002 and 2003 to improve employee morale and that
new hires were necessary to meet agency needs.  Defs.' 56.1 Stmt.
¶ 32; Gill Hearn Dep. 20-22.

dissatisfaction with his work; Crawford has failed to show that Defendants' stated basis for terminating him is pretextual.

The undisputed evidence shows that Crawford has at least three incidents of "inappropriate" conduct on his record and supervisors expressed dissatisfaction with his work, particularly from 1999 to 2003.  E.g., Defs.' Ex. 24 (memorandum regarding DOI's investigation of allegations made in 1999 that Crawford had improperly allowed his cousin to use a DOI parking plaque); Defs.' Ex. 25 (memorandum regarding DOI's investigation of allegations made by Crawford's co-workers that he had disclosed the details of a then-ongoing confidential DOI investigation to a radio station disk jockey); Defs.' Ex. 27; Defs.' Ex. 28 (memorandum from Alain M. Bourgeois, DOI's First Deputy Commissioner, to Crawford stating that DOI concluded that Crawford "engaged in inappropriate conduct in [his] performance as a Special Investigator" with DOI); Crawford Dep. 105-08; Defs.' Reply Ex. 4.

Crawford makes conclusory allegations that Defendants' proferred reasons for his termination were pretextual because he was one of the oldest investigators at DOI, he believed DOI treated black males poorly, and he believed that DOI treated females better than males.  Pls.' Ex. 30 ¶¶ 14, 18.  Crawford also argues that he received positive reviews on his recent performance evaluations.  Pls.' Ex. 30 ¶ 6 & Ex. A.  Assuming this is true, it does not counter Defendants' evidence that his

supervisors expressed dissatisfaction with his work and decided to retain employees with better records.  Because Crawford's largely unsupported allegations fail to counter Defendants' evidence, he has not shown that Defendants' stated reasons for terminating him were pretextual.

### 2.   Ledlum

DOI has provided evidence that it terminated Ledlum because his supervisors believed that he lacked the ability independently to handle the investigative tasks required of an investigative auditor.  Green Dep. 67 ("[Ledlum] wasn't doing as well as [Green] had hoped in the financial investigations unit in terms of doing an investigative analysis of some of the financial records."); Ledlum Dep. 167-82 (explaining that a supervisor consistently criticized his work and reprimanded him); see also Defs.' Ex. 33 (performance evaluation of Ledlum, stating that "[u]nder supervision, [Ledlum] uses investigative techniques and resources effectively").

In support his claims of age and sex discrimination, Ledlum argues that: (1) he saw "old" people being laid off; (2) Vincent Green ("Green"), Ledlum's supervisor, made "age-related remarks"[7]; and (3) females younger than he were retained.  Ledlum

_____

[7] Plaintiffs argue that "age-related remarks" are evidence of age discrimination.  For example, they argue that Green told Plaintiff Zaremski she was "too old" for Peace Officer training and that Green stated that he wanted to retain younger employees who were doing a good job.  Assuming, arguendo, that DOI supervisors made age-related remarks, DOI's evidence that

11

Dep. 234, 237-39.  These conclusory statements are insufficient
to counter Defendants' well-documented position that Ledlum
struggled with investigatory work, and that DOI needed an
employee who could perform both investigative and auditor tasks
after downsizing.  E.g., Green Dep. 105-06 ("If we were
downsizing, I needed to factor in what was I going to be left
with and what skill sets was I going to be left with in order to
fulfill the mission of the agency.  So was [Ledlum] going to be
able to do investigative work that needed to be done and go into
the field and do investigations, do a forensics analysis of the
bank records that needed to be done?  In those areas, he was
marginal to satisfactory.").  Ledlum has accordingly failed to
establish that Defendants' stated reasons for terminating him
were pretexutal.

### 3.  Reynolds

Defendants state that they decided to lay off Reynolds
because she lacked skills critical to her position; Reynolds has
failed to establish that this reason is pretextual.

Defendants have produced performance evaluations stating
that Reynolds struggled during her tenure at DOI.  Defs.' Ex. 41
(Reynolds's January 8, 2002, performance evaluation, rating her
overall performance as "conditional" and stating that she must

_____

Plaintiffs' jobs were eliminated or that Plaintiffs' were
terminated for poor performance remains unrebutted.  See Emanuel
v. Oliver Wyman & Co., LLC, 85 F. Supp. 2d 321, 335 (S.D.N.Y.
2000).

12

"[w]ork towards enhancing her knowledge base in the Information Systems Security field"); Defs.' Ex. 42 (Reynolds's December 20, 2002, performance review, stating that Reynolds was improving but still "gets lost in those details and tends to lose focus on the larger demands of the project at hand"); see also Defs.' Ex. 44, 47 (Emails between Reynolds and her supervisors indicating, inter alia, she lacked familiarity with Microsoft Word).  In July 2001, one of Reynolds's managers sent an email identifying "serious errors" in a project on which Reynolds had worked.  Defs.' Ex. 37.  Later that month, Reynolds and another manager signed a work plan stating that she had "gaps in the basic skills to execute her Job Description as a Senior Security Analyst and perform tasks assigned."  Defs.' Exs. 38-39.  The work plan also included an outline that Reynolds was to follow to upgrade her skills.  Defs.' Exs. 38-39.  In October 2001, Reynolds was told that her request to be reassigned to the CISAFE Enforcement Group was denied because "importantly . . . you have serious performance issues that must be resolved prior to any job change."  Defs.' Ex. 40.

Reynolds does not dispute this evidence; instead, she alleges that DOI's expectations were too high and that DOI denied her training opportunities.  She has provided no evidence to support these allegations, which are belied by the fact that she attended at least 25 training sessions, all of which DOI approved.  Defs.' Ex. 54.  In support of her allegations of age

13

discrimination, Reynolds argues that the number "68" was written on her resume and that she graduated college in 1968; she alleges that this indicates age was a factor in deciding to lay her off. This allegation is pure speculation and does not counter Defendants' evidence that her work was unsatisfactory. McPherson, 457 F.3d at 215 n.4 ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). Accordingly, Reynolds has failed to establish that Defendants' stated reasons for terminating her employment are pretextual.

### 4.  Rutkowski

Defendants state that Rutkowski was terminated because the Covert Support/Investigative Funding Unit -- the unit she supervised -- was eliminated.  English Dep. 82, 87-89.  Rutkowski presents no evidence that DOI's decision to eliminate her unit was discriminatory; instead, she focuses upon DOI's 2002 decision to transfer supervision of certain duties from her to Green. Defendants' evidence, however, is sufficient to establish that DOI reassigned these duties to address problems that had not been handled under Rutkowski.  E.g., Defs.' Ex. 57 (Email from Dan Brownell to Green dated June 26, 2002, stating that: "The situation regarding parking summons being issued to DOI vehicles has gotten out of hand.  The amount of money this office owes for unpai[d] summons is astronomical!").[8]  Rutkowski has accordingly

---

[8] Rutkowski argues that she was unaware of the problems in the Covert Support/Investigative Unit.  Assuming, arguendo, that

failed to establish that Defendants' stated reasons for terminating her are pretextual.

### 5.  Scicere

Defendants state that Scicere was terminated because the Internal Control Unit -- his unit -- was eliminated and his position's few remaining functions were transferred to Ana Albino ("Albino").  English Dep. 35, 41-42, 63-69; Scicere Dep. 152-53; Defendants argue that Albino, who had experience with "special projects" at DOI, was a more versatile employee than Scicere. English Dep. 43, 65-68 ("We felt that after looking at everybody's history, experience and work knowledge, Ms. Albino really had a broader range of experience and familiarity with a lot more operations and a lot more functions with the agency than Mr. Scicere did.").  Scicere argues that his position was not eliminated but that his duties were <u>transferred</u> to Albino. Scicere argues that this fact suggests that DOI discriminated against him because he is a black male older than forty.  Scicere Dep. 149-50.  Scicere has pointed to nothing to back this conclusory assertion and has therefore failed to establish that Defendants' stated reasons for his termination are pretextual.

---

Rutkowski was unaware of these problems, that fact does not establish that DOI was discriminatory in transferring supervision of certain duties to Green or that its stated reason for doing so was somehow pretextual.

### 6.    Smith

Defendants argue that they terminated Smith's employment because he was not a productive employee and because his supervisors had expressed dissatisfaction with his job performance.  Defs.' Ex. 75 (Memorandum from Elyse N. Post, Deputy Inspector General, to Peter Bloch, Deputy Commissioner, and Felicia Mennin, Inspector General, outlining five complaints Smith investigated unsatisfactorily); Ex. 6 (Smith's Dec. 31, 1999, performance review, rating him as "Marginal" and stating that his "work is not at a level expected of a chief investigator"; Smith did not sign the appraisal and wrote that it was "not a true, fair, or objective reflection of [his] job performance during this appraisal period"); Elizabeth Glazer Dep. ("The primary reason for Mr. Smith being placed on a layoff list was his current and past performance in his job; [h]e didn't appear to be putting much effort into his job.  The inspector general felt he couldn't rely upon him.").

Smith argues that Defendants' stated reason for his termination is pretextual because a younger male and two females remained in the department.  Smith Dep. 16-17.  Smith has pointed to nothing in the record, however, to counter Defendants' contention that Smith was unproductive.  In fact, Smith testified that he and his supervisor, John McMahon ("McMahon"), had a

personality conflict, which limited their productivity.[9]  Smith
Dep. 17-22.  Given that his own deposition testimony confirms
Defendants' assertion, Smith has failed to establish pretext.

### 7.  **Zaremski**

Defendants state that Zaremski was laid off because she
lacked the ability to perform her duties without supervision and
had weak investigative skills.  E.g., Defs.' Ex. 77 (Memorandum
dated February 15, 1989, from Zaremski to Patrick Hoey, First
Deputy Commissioner, recounting a conversation where her
supervisor told her that investigations were "not [her] kind of
work" and asking for her resignation; this request was
subsequently rescinded); Defs.' Ex. 81 (Email from Green to
Zaremski discussing her "totally unprofessional and unwarranted
behavior" and stating that her "actions on Thursday suggest" that
she feels she can "pick and choose" what she works on); Green
Dep. 218 (stating that, while Zaremski performed her duties
satisfactorily, she was not providing the agency with something
that did not already have); Glazer Dep. 68-69 (stating that DOI
believed that Zaremski "was not able to fulfill all the functions
that an investigator  is expected to fulfill").[10]  Zaremski

---

[9] Defendants initially included McMahon in the 2003 layoffs
but later reassigned him to a different position funded by a
different agency.  Green Dep. 215; Glazer Dep. 147-48.

[10] Zaremski contends that Green told Zaremski she was "too
old" for peace officer training.  Assuming, arguendo, that Green
made this statement, it is not probative of age discrimination,
as Green recused himself from nominating for peace officer

argues that this reason is pretextual because her performance reviews indicate that she performed certain duties satisfactorily.  This allegation is insufficient to counter Defendants' stated reasons for her termination, given that those reviews do not indicate she performed the investigative tasks DOI needed after downsizing.  Zaremski has accordingly failed to establish pretext.

### 2.   **Prima Facie** Case of Retaliation

Ledlum and Smith have failed to make a prima facie case of retaliation.  To state a prima facie case of retaliation, a plaintiff must show: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).  Here, Ledlum and Smith have set forth no evidence to support their claims that DOI retaliated against them.

Ledlum argues that DOI was aware that he filed a complaint with the Equal Employment Opportunities Commission (the "EEOC") and suggests that DOI did not hire him for a different position because of that complaint.  Ledlum has presented no evidence,

---

training persons who worked in units reporting to him.  Green. Dep. 59-60.

however, to suggest that there is a causal connection between his

EEOC complaint and any adverse employment action.  Likewise,
Smith has failed to present any evidence that there is a causal
connection between protected activity and any adverse employment
action.

Accordingly, Ledlum and Smith have failed to make a prima
facie case of retaliation.  Crews v. Trustees of Columbia Univ.,
452 F. Supp. 2d 504, 523 (S.D.N.Y. 2006).

**III. Conclusion**

Accordingly, the Court grants Defendants' motion for summary
judgment [#50].  The Clerk of Court is directed to close the
case.  Any pending motions are moot.[11]

SO ORDERED.

Dated:    New York, New York
          September 27, 2007

                                    Kimba M. Wood
                          United States District Judge  9/27/07

---

[11] Because the Court has concluded that Defendants have
articulated legitimate, nondiscriminatory reasons to terminate
Plaintiffs, and Plaintiffs have failed to show that these reasons
are pretextual, Defendants' argument that Plaintiffs' claims
against Kozlow, McMahon, Pittell, and VanderNaalt should be
dismissed is moot.

19